IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT ALOI                          :

                                     :

    v.                               :   Civil Action No. DKC 11-2591

                                     :

MOROSO INVESTMENT PARTNERS, LLC
                                     :

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of contract and fraud case are a motion to dismiss for failure to state a claim, or in the alternative, for summary judgment (ECF No. 8) and two motions to seal (ECF Nos. 9, 16) filed by Defendant Moroso Investment Partners, LLC.  The relevant issues have been briefed, and the court now rules, pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the following reasons, the motion to dismiss or for summary judgment that will be construed as a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), will be granted in part, without prejudice, and denied in part; and the motions to seal will be denied.  Plaintiff will be granted 14 days leave to amend his complaint.

**I.  Background**

The following are the facts as set forth in Plaintiff's complaint and considered in the light most favorable to

Plaintiff.    On September 12, 2011, Plaintiff Robert Aloi commenced this action regarding two contracts he entered with Defendant Moroso Investment Partners, LLC ("Moroso").    Plaintiff first contacted Joe Lubeck ("Lubeck") of Moroso in July 2009 to enter into a joint venture project to purchase several race tracks and other industry entities.  (ECF No. 1, at 3).    Until May 2010, Plaintiff continued to work with Defendant and other individuals towards development of that project.  (*Id.* at 3-4).

On May 11, 2010, the parties entered into a Consulting Agreement.[1]   (*Id.* at 4).    Section 2(A) of the Consulting Agreement states that their formal relationship would begin when a contemplated "new company" was formed, or when the new company's letter of intent was signed.  (ECF No. 1-1, at 3). Pursuant to this contract, the parties' relationship would expire on July 30, 2010.[2]  The Consulting Agreement contained a three pronged compensation framework for Plaintiff's consulting work.  First, Section 3(A) provided Mr. Aloi a "Consulting Fee." Plaintiff was to receive a $10,000 payment at the signing of the new company's letter of intent and a monthly payment of $10,000

---

[1] Because Plaintiff incorporated the Consulting Agreement, Settlement Agreement, and Demand letter into the complaint by reference, the documents may be considered in evaluating the motion to dismiss without converting it to a motion for summary judgment.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).
[2] The Consulting Agreement provided for renewal of the contract "by mutual written agreement of the parties."  (ECF No. 1-1, at 3).

for the remainder of the contract. (*Id.* at 4-5). Second, Section 3(B) provided Mr. Aloi a commission fee "[i]n the event that [Defendant] ultimately receive[d] funding or acquire[d] a business or businesses, which acquisition [was] sourced directly by [Plaintiff] or for which funding [was] sourced by [Plaintiff], [Plaintiff was to] receive as additional compensation at closing one and [a] half percent (1.5) % of the gross purchase price of the business." (*Id.* at 5). Finally, Section 3(C) provided Plaintiff a salaried position as Chief Operating and Expansion Officer with the new company. This position was to carry a base yearly salary of $120,000. (*Id.* at 5-6).

The contemplated new company, Moroso Entertainment, was formed near the end of May 2010 (ECF No. 1 ¶ 25), and Defendant paid $25,000 of the $30,000 monthly compensation owed to Plaintiff pursuant to Section 3(A) of the Consulting Agreement (ECF No. 1-2, at 2). Plaintiff never received a salaried position, however. (ECF No. 1, at 5). Nor did Plaintiff receive the 1.5% commission after Moroso acquired a raceway for $2,000,000 in January 2011. (*Id.*).

In response to a demand letter sent by Plaintiff's counsel to Defendant's counsel (ECF No. 1-2), the parties entered into settlement negotiations on March 8, 2011. (ECF No. 1, at 6). Defendant, through Lubeck and Defendant's attorney, told

Plaintiff that "a financial closing was anticipated to occur on or before April 30, 2011 [and] that no funds were presently available to fund the Settlement Agreement therefore making it necessary for [Plaintiff] to wait for a financial closing to occur to be paid his settlement proceeds." (*Id.*).   The Settlement Agreement stipulated that once the private equity deal between Moroso and a private investor closed, Defendant would pay Plaintiff a one-time payment of $100,000, as well as annual payments of $60,000 for five years.   (ECF No. 1-3). Pursuant to the Settlement Agreement, Defendant was to give Plaintiff regular updates regarding the financial closing. (*Id.* ¶ 1.1).   In exchange, Plaintiff discharged and released Defendant from any claims arising under the Consulting Agreement. (*Id.*).   The Settlement Agreement further provided that "in the event the Financial Closing does not occur by July 31, 2011, . . . this Agreement shall immediately become null and void with all parties reserving all of their rights with regard to the Consulting Agreement and any other agreement among the parties." (*Id.* ¶ 1.3).

Despite his requests, Plaintiff did not receive "timely and forthright updates" from Defendant. (ECF No. 1, at 6). Plaintiff also notes that "[a]s early as April 4, 2011, [Plaintiff] was made aware of certain track improvements" at the newly-purchased Memphis raceway, and asserts that Defendant must

have had funds to pay Plaintiff under the Consulting Agreement when it negotiated the Settlement Agreement. (*Id.* at 7). Both parties agree that the Financial Closing did not occur by the July 31 deadline set forth in the Settlement Agreement. (ECF No. 8, at 8); (ECF No. 12, at 6).

Asserting diversity jurisdiction, Plaintiff filed this complaint on September 12, 2011, alleging counts of fraud, negligent misrepresentation, and breach of contract against Defendant and seeking $250,000 in compensatory damages on every count, as well as punitive damages. Defendant filed a motion to dismiss or for summary judgment on October 24, 2011. (ECF No. 8). Plaintiff filed a response in opposition (ECF No. 12), and Defendant filed a reply (ECF No. 15). Defendant also filed motions to seal the motion to dismiss and its attachments (ECF No. 9) and the reply (ECF No. 16).

## II. Analysis[3]

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.

---

[3] The parties agree that Maryland law governs Plaintiff's claims.

8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged,

but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### A.  Fraud

In its motion to dismiss, Defendant contests the sufficiency of the elements of fraud as pleaded in the complaint. In Maryland, the elements of fraud are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 97 (2002). Claims of fraud are subject to a heightened pleading standard under Fed.R.Civ.P. 9(b).[4]  *Harrison*, 176 F.3d at 783-84. Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

---

[4] Lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

particularity.    Malice,   intent,   knowledge,   and   other   condition
of   mind   of   a   person   may   be   averred   generally."    The   word
"circumstances"   "is   interpreted   to   include   the   'time,   place   and
contents   of   the   false   representation,   as   well   as   the   identity   of
the   person   making   the   misrepresentation   and   what   [was]   obtained
thereby.'"   *Superior   Bank,   F.S.B.   v.   Tandem   Nat.   Mortg.,   Inc.*,
197   F.Supp.2d   298,   313-14   (D.Md.   2000)   (quoting   *Windsor   Assocs.
v.   Greenfeld*,   564   F.Supp.   273,   280   (D.Md.   1983)).    The   purposes
of   Rule   9(b)   are   to   provide   the   defendant   with   sufficient   notice
of   the   basis   for   the   plaintiff's   claim,   protect   the   defendant
against   frivolous   suits,   eliminate   fraud   actions   where   all   of
the   facts   are   learned   only   after   discovery,   and   safeguard   the
defendant's   reputation.   *Harrison*,   176   F.3d   at   784.    In   keeping
with   these   objectives,   a   "court   should   hesitate   to   dismiss   a
complaint   under   Rule   9(b)   if   the   court   is   satisfied   (1)   that   the
defendant   has   been   made   aware   of   the   particular   circumstances
for   which   she   will   have   to   prepare   a   defense   at   trial   and   (2)
that   [the]   plaintiff   has   substantial   prediscovery   evidence   of
those   facts."   *Id.*

Count   I   of   Plaintiff's   complaint   alleges   that   Defendant
falsely   represented   during   negotiations   of   the   Settlement
Agreement   that   it:    (1)   did   not   presently   have   funds   to   pay
Plaintiff   money   owed   under   the   Consulting   Agreement,   and   (2)
that   it   never   intended   to   perform   under   the   Settlement

Agreement.   These false representations induced Plaintiff to enter into the Settlement Agreement, in which Plaintiff would only receive payments after the anticipated Financial Closing. Plaintiff argues that, absent Defendant's fraud, he would not have agreed to the Settlement Agreement.

Plaintiff alleges that Defendant's fraud induced him to sign the Settlement Agreement. *See Wedeman v. City Chevrolet Co.*, 278 Md. 524, 529, (1976) ("[W]hen one may be induced by fraud to enter into a contract, the tort in that instance cannot be said to arise out of the contractual relationship. It is the tortious conduct which conversely induces the innocent party to enter into the contractual relationship.").

Defendant argues that Moroso did not make a false representation to Aloi because the allegedly fraudulent statements were not statements of fact, but "of probability or expectation about a future event." (ECF No. 8, at 14). In order for a statement "to constitute a 'false representation,' a statement must be a misrepresentation of material fact." *Parker v. Columbia Bank*, 91 Md.App. 346, 359-60 (1992) (quoting *Snyder v. Herbert Greenbaum & Assocs.*, 38 Md.App. 144, 148 (1977)). Further, to survive a motion to dismiss, the alleged fraudulent statements cannot be "merely promissory in nature, or upon expressions as to what will happen in the future." *Leven v. Singer*, 227 Md. 47, 63 (1961). Indeed, "[g]reat expectations

often prove disappointing, but do not prove fraud." *Smith v. Cohen*, 256 N.Y. 33, 36 (1931). Simply because a statement concerns an event that may occur in the future does not preclude liability based on fraud, however. *Bagel Enter., Inc. v. Baskin & Sears*, 56 Md. App. 184 (1983) (holding that Maryland recognizes an action for fraud based on fraudulent representations of future intentions). "That the misrepresentation of one's own intention may constitute the misrepresentation of a present fact is clear." *Weisman v. Connors*, 312 Md. 428, 456 (1988). That is, an action for fraud may not be dismissed on this basis if the alleged fraud is based on a defendant's promise that is made with the present intention not to perform that promise. *Sass v. Andrew*, 152 Md.App. 406, 436 (2003); *see also Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 197 (1995) (holding that "defendant's deliberate misrepresentation of his existing intentions, where the misrepresentation was material to the transaction giving rise to the alleged fraud, may form the basis for an action in fraud or deceit"); *Gross v. Sussex Inc.*, 332 Md. 247, 258 (1993) ("making a promise as to a matter material to the bargain with no intention to fulfill it is an actionable fraud"); *Tufts v. Poore*, 219 Md. 1, 12 (1959) ("The gist of the fraud in such cases is . . . the fraudulent intent of the promisor, the false representation of an existing intention to perform where such

10

intent is in fact non-existent."); *Councill v. Sun Ins. Office of London*, 146 Md. 137, 150 (1924) (recognizing that a claim for fraud exists if a promise is made without the intention to perform, and is made to induce the plaintiff to act on that promise).  Mr. Aloi alleges that when Defendant induced him to enter the Settlement Contract, it misrepresented the present fact that it was unable to pay him at that time, and that Defendant did not intend to close a deal for private equity financing on April 30, 2011 at the time it entered into the Settlement Agreement.  (ECF No. 8, at 7).  These facts are material because Plaintiff likely would not have signed the Settlement Agreement if he had known that:  (1) Defendant had money to pay Plaintiff on the initial Consulting Agreement, and (2) Defendant would not close the Financing Deal, thus resulting in its non-performance of the Settlement Agreement.  These constitute allegations of present and material facts misrepresented by Defendants.

Defendant also argues that these present facts are not plead with the requisite particularity.  First, it argues that the complaint does not allege facts showing that at the time the alleged misrepresentations were made that Defendant actually did not intend to move forward with the equity financing closing, and it similarly did not allege facts actually demonstrating that Defendant did have money to pay Plaintiff on the original

Consulting Agreement.  (ECF No. 8, at 15).  Plaintiff infers and alleges in the Complaint that rehabbing the Memphis racetrack demonstrates that Defendant had resources to pay him on the Consulting Agreement.  (ECF. No. 1, at 7).  Plaintiff also avers in an affidavit attached to his opposition to Defendant's motion that Defendant was facing an audit at this time, and that Defendant's intent to induce Plaintiff into the Settlement Agreement on fraudulent grounds was a bad faith delay of litigation, to keep a lawsuit for breach of contract from appearing on Defendant's audit report.  (ECF No. 12-1, at 5).

Alleging the fact of the audit in the complaint could be sufficient to demonstrate Defendant's intent never to close the equity financing at the time it signed the Settlement Agreement with Plaintiff.  Materials outside of the complaint generally may not be considered when evaluating a complaint under Rule 12(b)(6).  *Braun v. Maynard*, 652 F.3d 557, 559 n. 1 (4th Cir. 2011).  Documents that plaintiffs attach to their response to a defendant's motion to dismiss are not considered when those documents were not explicitly relied upon or referenced in the complaint.  *Id.*  Therefore, because the affidavit was not explicitly relied upon in the complaint, statements regarding the audit will not be considered to resolve Defendant's motion to dismiss.  Plaintiff's complaint, therefore, does not meet the

heightened pleading standard of Rule 9(b) with respect to the first element of fraud.

Defendant next argues that Mr. Aloi has not alleged any facts tending to show that Defendant knew its statements were false or made for the purpose of defrauding Plaintiff. (ECF No. 8, at 15). This argument fails for two reasons. First, "[t]he second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison*, 176 F.3d at 784 (citing 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 612 (2d ed. 1990)). Second, Mr. Aloi does allege some conclusory and inferential facts that indicate Defendant knew its statement that it did not have the money to pay Mr. Aloi at the time it entered into the Settlement agreement was false. This falsity is inferred through the allegation that Defendant improved its newly-acquired Memphis International Raceway within three weeks of inducing Mr. Aloi to sign the Settlement Agreement. Therefore, Plaintiff's complaint meets the Rule 9(b) standard on this element of fraud.

Defendant next argues that it was unreasonable for Plaintiff to rely on Defendant's statements because they were made prior to the signing of the Settlement Agreement, which contained an integration clause that precludes Plaintiff from

introducing evidence outside of the language of the contract. (ECF No. 8, at 13). As a general rule of contract construction,

> No principle of law is more firmly settled than that which excludes parol evidence from being used either at law or in equity for the purpose of contradicting, adding to, subtracting from, or varying the terms of a deed, or controlling its legal operation and effect, except where it is impeached for fraud, or where it is sought to be reformed upon the allegations of fraud, accident or mistake.

*Bladen v. Wells*, 30 Md. 577, 581 (1869). Under Maryland law, "a plaintiff can successfully bring a tort action for fraud that is based on false pre-contract promises by the defendant even if (1) the written contract contains an integration clause and even if (2) the pre-contractual promises that constitute the fraud are not mentioned in the written contract." *Greenfield v. Heckenbach*, 144 Md.App. 108, 130 (2002). Therefore, the mere inclusion of an integration clause in the Settlement Agreement does not prevent Plaintiff from alleging that he was fraudulently induced into entering the contract.

Along these lines, Defendant also argues that Plaintiff could not rely on any of its statements, and that Plaintiff did not suffer any damages, because the contract itself was expressly conditioned on the equity financing deal closing, and provided that the parties would be returned to the status quo

under the Consulting Agreement if it did not close.  (ECF No. 8, at 15).  Yet,

> there is no authority that we are required to follow in support of the proposition that a party who has perpetrated a fraud upon his neighbor may, nevertheless, contract with him in the very instrument by means of which it was perpetrated, for immunity against its consequences, close his mouth from complaining of it and bind him never to seek redress.  Public policy and morality are both ignored if such an agreement can be given effect in a court of justice.

*Greenfield*, 144 Md.App., at 131; (quoting *Bridger v. Goldsmith*, 143 N.Y. 424, 428 (1894)).  Defendant cannot rely on the terms of the allegedly fraudulently induced contract to defeat Plaintiff's claim of fraud.  Therefore, this argument is unavailing, and Plaintiff's allegations of reliance on Defendant's statements are sufficient at this stage.

Further, even though the Settlement Agreement allegedly includes a clause that returns the parties to the status quo before the contract was signed, this fact does not preclude Plaintiff from suing for damages under a fraud theory.  In Maryland, a party who is induced to enter into a contract by fraudulent misrepresentations has alternative remedies: "it is settled that when a party to a contract discovers a fraud has been perpetrated upon him [or her], he [or she] is put to a prompt election to rescind the contract or to ratify it and claim damages."  *Merritt v. Craig*, 130 Md.App. 350, 358 (2000)

(quoting *Wolin v. Zenith Homes, Inc.*, 219 Md. 242, 250-51 (1959)).  It is the general rule that the commencement of an action for damages for fraud is an affirmance of the contract and an election to claim damages under the contract.  *Doe Mountain Enter., Inc. v. Jaffe*, 171 Md.App. 1, 17 (2006) (noting that ratification and suit for damages precludes rescission) (citing *Sommers v. Dukes*, 208 Md. 386, 393 (1955)).  Plaintiff alleges that he suffered economic loss as a result of Defendant's fraud and failure to perform on the Settlement Agreement.  Therefore, at this stage, Mr. Aloi has sufficiently alleged damages caused by Defendant.

As discussed above, Plaintiff does not adequately allege facts to meet the heightened pleading requirements of Rule 9(b).  To survive a motion to dismiss on the fraud claim, Plaintiff must particularly allege in his complaint "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison*, 176 F.3d at 784.  Plaintiff alleges facts in response to Defendant's motion to dismiss that were not included in his complaint.  Had they been included in the pleadings, Plaintiff's complaint may have survived this motion.  Therefore, the fraud count will be dismissed without prejudice, and Plaintiff will be afforded the opportunity to amend his complaint.

16

B.   **Negligent Misrepresentation**

To establish liability for negligent misrepresentation in Maryland, a plaintiff must prove that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 135-36 (2007). Maryland also recognizes a cause of action for negligent misrepresentation based on a failure to disclose. *See Lubore v. RPM Assocs., Inc.*, 109 Md.App. 312, 340 (1996). "Fraud and negligent misrepresentation share common elements." *Gross*, 332 Md. at 259-60 (distinguishing the torts based on the scienter and duty elements).

Defendant's arguments against Plaintiff's negligent misrepresentation claim are identical to those against the fraud claim. As outlined above, Plaintiff has not plead with sufficient particularity the false statement of material fact that led to his injury. Additionally, "there can be no negligence where there is no duty that is due." *Village of Cross Keys v. U.S. Gypsum*, 315 Md. 741, 751 (1989) (quoting

17

*W.Va. Central R.R. Co. v. Fuller*, 96 Md. 652, 666 (1903)).
Plaintiff's complaint offers conclusory statements that he and
Defendant share a "special relationship or intimate nexus" that
imposes a duty of care on Defendant.   (ECF No. 1, at 10).
Maryland courts hold that "where the failure to exercise due
care creates a risk of economic loss only, an intimate nexus
between the parties [i]s a condition to the imposition of tort
liability." *Superior Bank*, 197 F.Supp.2d at 320 (citing *Jacques
v. First Nat'l Bank of Md.*, 307 Md. 534 (1986)) (internal
quotations omitted).   Such an intimate nexus requires
"contractual privity or its equivalent," and will turn on the
closeness of the parties' relationship.   *Id.; see also Tischler
v. Baltimore Bancorp*, 801 F.Supp. 1493, 1504 (D.Md. 1992)
(noting that "an 'intimate nexus' cannot exist unless a
defendant is aware of a specific party or class of parties which
intend to rely upon the defendant's statement") (quoting
*Brickman v. Tyco Toys*, Inc., 722 F.Supp. 1054, 1062 (S.D.N.Y.
1989)).   Tort liability does not arise automatically, however,
simply because a contract exists between two parties.   *Silver
Hill Station, Ltd. P'ship v. HSA/Wexford Bancgroup LLC*, 158
F.Supp.2d 631, 636-40 (D.Md. 2001); *Jones v. Hyatt Ins. Agency,
Inc.*, 356 Md. 639, 654 (1999) (noting that "contractual
obligation, by itself, does not create a tort duty.   Instead,
the duty giving rise to a tort action must have some independent

18

basis.") (quoting *Mesmer v. Md. Auto. Ins. Fund*, 353 Md. 241, 253 (1999)); *see also Jacques*, 307 Md. at 534, ("Nor does a duty assumed or implied in contract by that fact alone become a tort duty.").

Plaintiff's negligent misrepresentation claim also fails because it does not allege facts showing that Defendant owes Plaintiff a duty in tort. Plaintiff does not allege any specific facts that show the parties had the type of close relationship that would require Defendant to exercise a duty of care with respect to Mr. Aloi. Therefore, the negligent misrepresentation count will be dismissed.

### C. Breach of Contract

Plaintiff lastly alleges breach of contract relating to the Consulting Agreement. The complaint alleges that "[Defendant] breached this contract by failing to pay [Plaintiff], failing [to] assign [Plaintiff] to the agreed upon corporate position, [and] by failing to provide [Plaintiff] a commission due from the purchase of the Memphis International Speedway." (ECF No. 1, at 11).

"It is well-established in Maryland that a complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *RRC Ne., LLC v. BAA Md.,*

*Inc.*, 413 Md. 638, 655 (2010) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480 (1977). "[I]n considering the sufficiency of [a complaint alleging breach of contract], 'any ambiguity or uncertainty in the allegations is to be construed against the pleader.'" *Id.*

### 1.    Consulting Fee

Plaintiff asserts that Defendant failed to pay him fully the $30,000 Consulting Fee required by Section 3(A) of the Consulting Agreement. (ECF No. 1, at 5). Defendant admits that the language of the Consulting Agreement clearly shows that a contractual obligation existed, and the complaint alleges breach. Defendant further admits liability: "Moroso does not dispute that, under Section Three (A) of the Consulting Agreement, $5,000 remains due and owing to Aloi." (ECF No. 8, at 18). Therefore, the motion to dismiss will be denied as to this part of the breach of contract claim.

### 2.    Commission Fee

Plaintiff also asserts that Defendant failed to pay the 1.5% commission (amounting to $30,000) due to him under Section 3(B) after Defendant acquired the Memphis racetrack. (ECF No. 1, at 5). Plaintiff argues that he is entitled to the commission because he "sourced" the funding or acquisition of the business as contemplated by the Consulting Agreement. (ECF No. 1-2, at 2). Defendant counters that this purchase is not

covered by the agreement, and even if it was, it occurred after the Consulting Agreement terminated, and it had no obligation to pay Mr. Aloi.  (ECF No. 8, at 17).

Given the facts that Plaintiff alleges – that Mr. Aloi was directly responsible for Defendant's purchase of the Memphis racetrack – the language of Section 3(B) demonstrates a contractual obligation for Defendant to pay him commission for this purchase.

The Consulting Agreement also does not require that all events contemplated by the contract be complete by Section 2(A)'s express end date.  Rather, it specifically provides that Defendant will be liable to Plaintiff for any work performed and compensation earned before the termination of the contract. (ECF No. 1-1, at 4).  Therefore, because Plaintiff alleges that his work, which was done prior to the July 30, 2010 end date of the Consulting Agreement led directly to Defendant's $2,000,000 purchase of the racetrack in Memphis, Plaintiff's breach of contract claim will not be dismissed as to the Commission Fee.

### 3.  Salaried Position

Plaintiff lastly asserts that "[d]espite the terms of the Consulting Agreement, [Plaintiff] was not . . . assigned his salaried position with benefits."  (ECF No. 1, at 5).  He contends that this is a breach of Section 3(C) of the agreement.

Plaintiff asserts that "[i]n or around May or June, 2010[,] a letter of intent was signed by [Lubeck, Moroso, and Feld Motorsports] triggering the compensation due to [Plaintiff]" but that he "was not assigned his salaried position with benefits." (*Id.*).   Defendant argues that "any obligations to employ [Plaintiff], [or] to pay him an Annual Salary . . . [arose] only after two things occur[ed]:   (i) funding for [Moroso Entertainment] [was] secured . . . ; and (ii) Moroso acquire[d] a new business or funding for such acquisition that [was] 'directly sourced' by [Plaintiff]".  (ECF No. 8, at 17).

Because the complaint does not clearly establish the futility of this claim, granting Defendant's motion to dismiss would be premature and inappropriate.  The parties disagree as to the definition of the "new company" at which Plaintiff was to have a salaried position, and at what point in the formation of that company Defendant's obligation to Plaintiff began. Plaintiff contends that this new company was formed and Defendant breached the contract by not performing under this section of the contract.   Defendant argues that the company never formed, that the conditions triggering its performance never occurred, and that the terms of the contract are too vague to enforce.   Nowhere does the Consulting Agreement define the term "new company."   The facts that Plaintiff allege could give rise to a breach of contract because the new company formed at

the signing of the letter of intent and Defendant did not pay
Plaintiff the agreed salary.   Because the facts alleged do not
conclusively show that Defendant did not breach the Consulting
Agreement, this claim will not be dismissed at this time.   *See
See Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir. 1972) ("The
construction of a contract is a question of fact which, if
disputed, is not susceptible of resolution under a motion to
dismiss for failure to state a claim"); *Fairfield Six/Hidden
Valley P'ship v. Resolution Trust Corp.*, 860 F.Supp. 1085, 1089
(D.Md. 1994) (noting that "Maryland courts do not favor the
destruction of contracts due to uncertainty") (citations
omitted); *see also Born v. Hammond*, 218 Md. 184, 188-89 (1958)
("a contract is not rendered unenforceable merely because the
parties do not supply every conceivable detail or anticipate
every contingency that may arise") (quoting *Rocklin v. Eanet*,
200 Md. 351, 357 (1952)).

   **D.   Motions to Seal**

   A motion to seal must comply with Local Rule 105.11, which
requires a party requesting documents be sealed to offer reasons
supported by specific factual representations justifying the
sealing, and to offer an explanation "why alternatives to
sealing would not provide sufficient protection."   Local Rule
105.11 (D.Md. 2011).

"In evaluating a motion to seal, the court must weigh the right of public access, which 'derives from two independent sources:  the common law and the First Amendment,'" against competing interests.  *Allstate Ins. Co. v. Warns*, No. 11–1846, 2012 WL 681792, at \*16 (D.Md. Feb. 29, 2012) (quoting *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004)).   The documents that Defendant seeks to seal are: Defendant's dispositive motion to dismiss, the briefs in support, and all accompanying attachments.   When documents associated with dispositive civil motions are at issue, the public's right of access to those documents derives from the First Amendment.   *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988); *Washington Post*, 386 F.3d at 576; *Warns*, 2012 WL 681792, at \*17.   Even though the Plaintiff consents to some documents being sealed, and did not lodge objections to the sealing of others, the question of whether the presumption of open public access to court documents has been overcome must be considered.   *See, e.g., Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F.Supp.2d 399, 437–38 (D.Md. 2006) (denying motion to seal where parties did not object).

Defendant fails to satisfy the requirements of Local Rule 105.11.   Defendant states in its briefs that its motion to dismiss and the attachments "describe certain confidential documents," (ECF No. 9, at 1), and that its reply "contains

confidential financial and business information." (ECF No. 16, at 2). Defendant fails to support these assertions with "specific factual representations" that show its legitimate interests will be compromised or to explain adequately "why alternatives to sealing would not provide sufficient protections" to these interests. Defendant only characterizes the documents as subject to confidentiality agreements and containing sensitive financial, business, and commercial information. These characterizations do not meet Defendant's "burden of showing that its interest in confidentiality or some other significant interest outweighs the strong presumption of public access." *Warns*, 2012 WL 681792 at *17 (citations omitted); *Waterkeeper Alliance, Inc. v. Alan & Kristin Hudson Farm*, 278 F.R.D. 136, 142 (D.Md. 2011) ("[D]esignation of the challenged materials as confidential will be permitted only if Defendants have established with specificity that disclosure of the material will result in some kind of substantial harm to their respective businesses, and that that harm outweighs both the necessity of the material to dispositive motions practice in this case and the traditional right to public access of judicial documents and records."). Therefore, the motions to seal will be denied. Defendant will be given fourteen days to refile motions that are in conformity with Local Rule 105.11. Alternatively, Defendant may withdraw these materials from the

record.   If it chooses not to do so, the documents will be unsealed after that time.

## III. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant Moroso Investment Partners, LLC, will be granted without prejudice as to the fraud and negligent misrepresentation claims, and denied as to the breach of contract claim.   Defendant's motions to seal will be denied. Plaintiff will be granted 14 days leave to amend his complaint. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
