IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT ALOI

    v.

MOROSO INVESTMENT PARTNERS, LLC

:
:
:    Civil Action No. DKC 11-2591
:
:

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of contract, negligent misrepresentation, and fraud case is the motion for leave to file a second amended complaint filed by Plaintiff Robert Aloi ("Plaintiff" or "Aloi") (ECF No. 41). On October 16, 2013, the parties filed a joint motion to stay the scheduling order in the case pending a settlement conference before Magistrate Judge William G. Connelly. (ECF No. 47). A settlement conference was held on November 25, 2013, but no settlement was reached. The court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to amend will be granted in part and denied in part.

## I.   Background

On September 12, 2011, Plaintiff commenced this action against Defendant Moroso Investment Partners, LLC ("Moroso" or

"MIP")[1] alleging fraud, negligent misrepresentation, and breach of contract. (ECF No. 1).[2] Plaintiff, who "developed an extensive skill set involving motor sports business and related entertainment ventures, including management and/or business development," contacted Joseph Lubeck ("Mr. Lubeck") of MIP in about July 2009 regarding a joint venture project for the acquisition of motor sports entities. (ECF No. 1 ¶¶ 7-9). On May 11, 2010, Plaintiff entered into a Consulting Agreement with MIP, under which Aloi was "to provide services to MOROSO/IHRA for the purposes of coordinating, analyzing, reviewing and purchasing and/or negotiating funding for various motor sports and entertainment properties included in the race track acquisition project." (ECF No. 1 ¶ 20). The Consulting Agreement, which Mr. Lubeck signed on behalf of Moroso Investment Partners, contained a three pronged compensation framework for Plaintiff's consulting work. First, Section 3(A) provided Mr. Aloi a "Consulting Fee." Plaintiff was to receive a $10,000 payment at the signing of the new company's letter of intent and a monthly payment of $10,000 for the remainder of the

---

[1] In the opening paragraph of the initial complaint, Plaintiff asserted that MIP also does business as IHRA Entertainment ("IHRA").

[2] The facts of this case as alleged by Plaintiff in the initial complaint were described in full in a prior opinion. *See Aloi v. Moroso Inv. Partners, LLC*, Civil Action No. DKC 11-2591, 2012 WL 4341741 (D.Md. Sept. 20, 2012).

contract. (ECF No. 1-1, at 4-5). Second, Section 3(B) provided Mr. Aloi a commission fee "[i]n the event that [Defendant] ultimately receive[d] funding or acquire[d] a business or businesses, which acquisition [was] sourced directly by [Plaintiff] or for which funding [was] sourced by [Plaintiff], [Plaintiff was to] receive as additional compensation at closing one and [a] half percent (1.5) % of the gross purchase price of the business." (*Id.* at 5). Finally, Section 3(C) provided Plaintiff a salaried position as Chief Operating and Expansion Officer with the new company. This position was to carry a base yearly salary of $120,000. (*Id.* at 5-6). In the initial complaint, Plaintiff asserted that "MOROSO/IHRA breached this contract by failing to pay ALOI, failing [to] assign ALOI to the agreed upon corporate position, and failing to provide ALOI with the agreed upon benefits, all pursuant to the terms of the contract." (ECF No. 1 ¶ 64).

In response to a demand letter sent by Plaintiff's counsel to Defendant's counsel (ECF No. 1-2), the parties entered into settlement negotiations on March 8, 2011. (ECF No. 1, at 6). Defendant, through Mr. Lubeck and Defendant's attorney, told Plaintiff that "a financial closing was anticipated to occur on or before April 30, 2011 [and] that no funds were presently available to fund the Settlement Agreement therefore making it necessary for [Plaintiff] to wait for a financial closing to

occur to be paid his settlement proceeds." (*Id.*). The Settlement Agreement stipulated that once the private equity deal between MIP and a private investor closed, Defendant would pay Plaintiff a one-time payment of $100,000, as well as annual payments of $60,000 for five years. (ECF No. 1-3). Pursuant to the Settlement Agreement, Defendant was to give Plaintiff regular updates regarding the financial closing. (*Id.* ¶ 1.1). In exchange, Plaintiff discharged and released Defendant from any claims arising under the Consulting Agreement. (*Id.*). The Settlement Agreement further provided that "in the event the Financial Closing does not occur by July 31, 2011, . . . this Agreement shall immediately become null and void with all parties reserving all of their rights with regard to the Consulting Agreement and any other agreement among the parties." (*Id.* ¶ 1.3). Plaintiff's fraud and negligent misrepresentation claims in the initial complaint were premised on allegedly false misrepresentations made by MIP and Mr. Lubeck in connection with the Settlement Agreement.

On October 24, 2011, Defendant moved to dismiss or for summary judgment. (ECF No. 8). On September 20, 2012, the court issued a memorandum opinion and order, denying Defendant's motion to dismiss as to the breach of contract claim, but granting the motion as to Plaintiff's claims for fraud and negligent misrepresentation. The order gave Plaintiff fourteen

(14) days within which to file an amended complaint with respect to these two claims. On October 4, 2012, Plaintiff filed a first amended complaint against MIP and elaborated on the allegations as follows. Aloi asserted that "[d]espite the fact that LUBECK and MOROSO failed to pay ALOI, LUBECK and MOROSO repeatedly represented to the racing industry that ALOI had been assigned a position as 'Special Projects and Track Development' with MOROSO." (ECF No. 20-1 ¶ 28). Plaintiff also alleged that Lubeck and MIP repeatedly stated that ALOI was "part of the team." (*Id.* ¶ 29). Plaintiff also asserted that despite Lubeck's assurances, Aloi was not paid the 1.5% commission under the Consulting Agreement. Plaintiff further alleged that "MOROSO orchestrated the Settlement in bad faith and agreed to its terms to delay ALOI's filing of a lawsuit against MOROSO so that an audit would not show open litigation between ALOI (an equity holder in MOROSO) and MOROSO." (*Id.* ¶ 44). In support of the fraud and negligent misrepresentation claims, Plaintiff alleged that "LUBECK and MOROSO/IHRA made a number of representations to ALOI and/or his counsel that a financial closing was anticipated to occur on or before April 30, 2011" to entice Plaintiff to enter into the Settlement Agreement. (*Id.* ¶ 49). Furthermore, "[a]s early as April 4, 2011, ALOI was made aware of certain track improvements at the Memphis International Raceway previously purchased by MOROSO/IHRA, the same track ALOI

helped MOROSO acquire . . . Plaintiff is informed and believes that MOROSO/IHRA paid for these track improvements either through funds received from a financial closing or from funds already in existence." (*Id.* ¶¶ 53-54). Aloi asserted in the first amended complaint that "MOROSO/IHRA, LUBECK . . . were purposefully misinforming him regarding MOROSO's financial condition and the nature of the anticipated financial closing." (*Id.* ¶ 58).

Defendant answered the complaint on October 22, 2012. (ECF No. 21). On October 31, 2012, a scheduling order was issued, setting December 17, 2012 as the deadline for moving for joinder of additional parties and amendment of pleading. (ECF No. 23). On November 14, 2012, the parties jointly requested modification of the scheduling order "to allow the parties time to explore early settlement/ADR conference before either party expends time and money toward discovery or experts." (ECF No. 26). The parties did *not* seek an extension of the December 17, 2012 deadline to join additional parties and amend the pleadings. The court granted the joint motion (ECF No. 27) and the case was referred to Magistrate Judge Connelly for ADR on November 15, 2012 (ECF No. 28). On April 15, 2013, the parties filed a joint status report, which discussed several telephone conferences with Judge Connelly and provided, *inter alia*, that "[t]he parties have exchanged written discovery and produced documents

but have agreed to postpone taking any depositions in order to focus their efforts and resources on settlement discussions. If the Parties are unable to reach settlement at the end of 30 days the parties will seek to [a]mend the Scheduling Order accordingly." (ECF No. 34, at 1-2).[3]

On May 21, 2013, Plaintiff moved to modify the scheduling order. In this motion, Plaintiff indicated that the date for joining additional parties and amending the pleadings was the only date on which the parties disagreed. Plaintiff proposed July 15, 2013 as the date for joining additional parties and amending the pleadings; he stated that "this date should be part of any amended schedule, as Plaintiff intends to amend his Complaint to conform to and reflect evidence discovered through the discovery process – all of which was discovered well after the original deadline for amendment of pleadings has passed." (ECF No. 38-1, at 1). On June 6, 2013, Defendant filed a partial opposition to this motion, objecting to Plaintiff's proposed extension of the deadline to move for joinder of additional parties and amendment of pleadings (ECF No. 39). On June 10, 2013, this court issued a paperless order, extending all deadlines in accordance with the parties' agreement, but

---

[3] The record reflects that the parties held telephone conferences with Judge Connelly on March 19, 2013, April 3, 2013, and April 17, 2013.

noting that leave to amend will be addressed if Plaintiff seeks belated leave. (ECF No. 40).

On July 8, 2013, Plaintiff moved for leave to file a second amended complaint, seeking to add the following six new defendants: Joseph Lubeck; Moroso Investment Partners II, LLC ("MIP II"); Moroso Investment Partners IV, LLC ("MIP IV"); Moroso Entertainment, LLC ("ME"); Moroso Entertainment SPE III, LLC ("ME III"); and IHRA Entertainment, LLC. Plaintiff also sought to add an unjust enrichment claim against MIP and all of the proposed defendants. In the proposed second amended complaint, Plaintiff asserts counts for fraud and negligent misrepresentation against Lubeck, MIP, and IHRA Entertainment, LLC and a breach of contract claim against MIP, MIP IV, ME, ME III, and IHRA Entertainment, LLC. Defendant opposed the motion on July 25, 2013 (ECF No. 43), and Plaintiff replied on August 12, 2013 (ECF No. 45). On October 16, 2013, the parties filed a joint motion to stay the scheduling order pending a settlement conference before Magistrate Judge Connelly on November 25, 2013. (ECF No. 47). The court issued a paperless order on the same day granting the parties' joint motion and staying the action until the November 25, 2013 settlement conference. The order directed that in the event the parties did not reach settlement at the settlement conference, they are to file a proposed new scheduling order the later of five days of the

settlement conference or after the court rules on Plaintiff's motion for leave to file a second amended complaint. (ECF No. 48). Judge Connelly held a settlement conference on November 25, 2013, but the parties were unable to settle.

## II. Analysis

Pursuant to Fed.R.Civ.P. 15(a)(2), the court should "freely give leave" to amend pleadings "when justice so requires." Fed.R.Civ.P. 15(a)(2). There is an important complication here, however: the scheduling order set a deadline of December 17, 2012 for the amendment of pleadings and joinder of parties, that deadline was never altered despite numerous modifications to the scheduling order, and that deadline has long since passed. (*See* ECF Nos. 23 & 27). Thus, the parties must do more than satisfy the liberal standard of Rule 15(a); they must first meet the mandates of Rule 16(b)(4), which calls for "good cause" to change a scheduling order. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008); *see also Wilson v. Appalachian Power Co.*, No. 3:10-0445, 2011 WL 221656, at *1 (S.D.W.Va. Jan. 24, 2011) (applying Rules 16(b) and 15(a) in analyzing untimely motion for leave to amend); *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D.Md. 2002) (same).

### A. Good Cause under Rule 16(b)(4)

Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." "Good cause"

under Rule 16(b)(4) is established when the moving party shows that it cannot meet the deadlines in the scheduling order despite diligent efforts. *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D.Md. 1999) (*quoting Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C. 1997), *aff'd by unpublished opinion*, 129 F.3d 116 (Table), 1997 WL 702267 (4th Cir. 1997)). Indeed, although other factors may be considered (*e.g.,* the length of the delay and whether the non-moving party could be prejudiced by the delay), *Tawwaan v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 768-69 (D.Md. 2010), "the primary consideration . . . in [determin]ing whether 'good cause' has been shown under Rule 16(b) relates to the movant's diligence," *Reyazuddin v. Montgomery Cnty., Md.*, No. DKC 11-0951, 2012 WL 642838, at *3 (D.Md. Feb. 27, 2012). Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard." *W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001). "If the moving [party] was not diligent, the inquiry should end." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995).

Plaintiff asserts that Defendant's delayed production of documents in discovery prevented him from seeking leave to amend the complaint earlier to add new defendants and the unjust enrichment claim. Plaintiff contends that his "good cause is

highlighted by Plaintiff's diligence in pursuing and reviewing discovery, and his expeditiousness in seeking to amend the complaint to encompass evidence revealed by discovery." (ECF No. 41-1, at 7). Specifically, Aloi argues that he propounded discovery requests on Defendant within eight days of the initial scheduling order, and repeatedly corresponded with Defendant regarding the production of discovery, but Defendant regularly requested extensions (to which Plaintiff consented). Plaintiff explains that Defendant stalled producing discovery, that the initial production only encompassed 78 pages of documents, and that it was "not until Magistrate Judge Connelly became involved and informally offered guidance was Plaintiff able to secure an extensive document production." (*Id.* at 8). Subsequently, Defendant provided approximately 4,800 pages of documents on March 28 and 29, 2013. (*Id.* at 4). Moreover, Plaintiff contends that

> [a]fter comprehensively reviewing these documents immediately after receiving them, Plaintiff became aware of the need to amend the pleadings to add additional, appropriate defendants whose role, and in many cases whose mere existence, was unknown to Plaintiff before Defendant produced documents. Plaintiff soon thereafter sought to modify the scheduling order to allow for pleadings. After this Court issued its order modifying the Scheduling Order, *See* ECF 40, Plaintiff quickly sought to obtain Defendant's consent to amend the pleadings, and promptly brought this motion when Defendant did not consent.

(*Id.* at 9).

Defendant counters that "Plaintiff was well-aware of the existence of a number of the new defendants and the potential causes of action prior to Defendant's document production." (ECF No. 43, at 8). Specifically, Defendant asserts that Plaintiff knew about Mr. Lubeck's involvement since the lawsuit's inception because Mr. Lubeck signed the Consulting Agreement and the Settlement Agreement on behalf of MIP and these agreements form the gravamen of Plaintiff's claims. Defendant also observes that "Plaintiff's allegations contained in the Second Amended Complaint with respect to Mr. Lubeck, particularly as it relates to the fraud and negligent misrepresentation claim, are the same allegations that were contained in the Amended Complaint." (*Id.*).

The record supports Defendant's position regarding Plaintiff's earlier knowledge of Mr. Lubeck's involvement. Plaintiff seeks to assert claims of fraud, negligent misrepresentation, and unjust enrichment against Mr. Lubeck. A motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. *See, e.g., CoStar Realty Information, Inc. v. Field*, 737 F.Supp.2d 496, 504 (D.Md. 2010) ("The Court finds that Plaintiffs have not provided a sufficient explanation [under Rule 16(b)(4)] for why they waited

until months after the close of discovery to seek leave to amend their Complaint, especially where the facts related to these two claims were alluded to as early as the First Amended Complaint."). Plaintiff's allegations concerning Mr. Lubeck's wrongdoing in the proposed second amended complaint are virtually identical to those in the October 4, 2012 first amended complaint and evidence Plaintiff's knowledge of Mr. Lubeck's alleged wrongdoing by this point. (*See, e.g.,* ECF No. 20-1 ¶ 43 ("ALOI is now aware that MOROSO/IHRA, LUBECK and SCHWARTZ were purposefully misinforming him regarding MOROSO's financial condition and the nature of the anticipated financial closing); ECF No. 20-1 ¶ 48 ("LUBECK, acting on behalf of MOROSO/IHRA, made these false statements to ALOI and his counsel knowing they were false, or with reckless indifference as to their truth, and with the purpose of defrauding ALOI in an effort to induce ALOI to sign the Settlement Agreement"); *see also* ECF No. 20-1 ¶ 72).

In fact, the record suggests that Plaintiff may have been aware of Mr. Lubeck's alleged involvement as early as September 12, 2011, when he first initiated this action. For instance, Plaintiff stated in the initial complaint that Mr. Lubeck made representations that a financial closing was anticipated to occur by April 30, 2011 and that no funds were available to fund the Settlement Agreement, which made it necessary for Aloi to

wait for a financial closing to occur before receiving the settlement proceeds. (ECF No. 1 ¶ 31). Plaintiff further alleged that Mr. Lubeck continued to assure Aloi through false representations that a financial closing was imminent and forthcoming. (*Id.* ¶ 37).

Plaintiff's rationale for not adding Mr. Lubeck appears to be that Aloi did not obtain adequate evidence regarding his involvement before Aloi received over 4,800 pages of discovery from MIP in late March of 2013. (*See* ECF No. 45, at 9). In order to satisfy the pleading requirements of Rule 8, however, a plaintiff need not prove his case in his complaint by "forecasting evidence." *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003); *Crouch v. City of Hyattsville, Md.*, Civil Action No. 09-2544, 2012 WL 718849 (D.Md. 2012)("the fact that Plaintiff may not have had sufficient evidence to provide a *Monell* claim before the deadline for the amendment of pleadings had no bearing on his ability to plead a *Monell* claim in a timely manner."); *Metro Media Entm't, LLC v. Steinruck*, Civil Action No. DKC 12-0347, 2013 WL 1833266, at *10 (D.Md. Apr. 30, 2013) ("The record reflects that Plaintiff learned by September 29, 2012, that Patrick Steinruck was living in Defendant's home on the date of the alleged infringement. Nevertheless, it waited well over five months to seek to add him as an additional defendant, and

it has failed to make any showing of diligence."). The allegations in the initial and first amended complaint undermine Plaintiff's position and suggest that indeed he had adequate knowledge of the factual allegations on which Plaintiff premises his claims against Mr. Lubeck as early as September 12, 2011 – and no later than October 4, 2012. Thus, Plaintiff's failure to add Mr. Lubeck as a defendant can only be attributed to a lack of diligence. Accordingly, Plaintiff will not be permitted to add Mr. Lubeck as a defendant in this action.

Similarly, Plaintiff's unjust enrichment claim, which he attempts to add against MIP (and all of the proposed defendants), is premised on facts alleged against MIP in the first amended complaint. Specifically, Plaintiff asserts in the second amended complaint – much like in the first amended complaint - that he developed business relationships for defendants, sourced the acquisition of race tracks, that defendants obtained substantial profits from his efforts, and that defendants "had knowledge of the benefit ALOI conferred on them, demonstrated by repeated correspondence and meetings between the parties . . . and emails from LUBECK individually and on behalf of other DEFENDANTS in or around August 2010 that ALOI was part of the team . . . that ALOI would be taken care of." (ECF No. 41-3 ¶ 101). Because Plaintiff has not demonstrated diligence in asserting an unjust enrichment claim

against MIP when he first learned of the allegations giving rise to this claim, he will not be allowed to assert unjust enrichment against MIP.

Although Plaintiff has not demonstrated good cause for adding an unjust enrichment claim against MIP and including Mr. Lubeck as a defendant, the same cannot be said for the remaining five defendants that Plaintiff seeks to add. Defendant concedes that ME III was "not previously identified in any pleading," but argues that "[w]ith respect to MIP II, MIP IV and ME, Plaintiff was aware of those entities no later than October 24, 2011, when Moroso outlined their respective roles in this dispute (or lack thereof) in its Motion to Dismiss." (ECF No. 43, at 9). Plaintiff counters that even if Plaintiff "had knowledge that certain entities existed, Plaintiff was not aware and could not have been aware, absent Defendant's long-delayed document production, of the highly relevant roles and the scope of the conduct of these entities." (ECF No. 45, at 9). Plaintiff's argument is persuasive. The Fourth Circuit has noted that a finding of "good cause" is justified under Rule 16(b) where at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline. *See In re Lone Star Indus., Inc. Concrete R.R. Cross Ties Litig.*, 19 F.3d 1429, 1994 WL 118475, at *11 (4th Cir. Apr. 7, 1994) (finding abuse of discretion in the district court's

refusal to allow amendment to add a new claim after scheduling order deadline) (unpublished table decision); *Long v. Blair*, No. 2:09-cv-00349, 2010 WL 1930220, at *4 (S.D.W.Va. May 12, 2010) (holding that good cause existed where the plaintiff did not establish a sufficient evidentiary basis to support new claims until after the deadline for amending his complaint and moved to amend immediately after the new evidence came to light).

Defendant's motion to dismiss referenced some of the entities Plaintiff now seeks to add, and based on the record, it appears that Plaintiff then diligently attempted to investigate the roles of these entities in this action by promptly seeking discovery from Defendant. Specifically, Plaintiff asserts that he sought discovery from Defendant shortly after the scheduling order was entered, the parties then jointly consented to multiple extensions for responding to Plaintiff's discovery requests, and Defendant "did not produce a single document until . . . January 31, 2013, at which time Defendant only produced 78 pages of discovery." (ECF No. 41-1, at 2). According to Plaintiff, Defendant subsequently provided thirteen (13) additional pages of documents before Judge Connelly held a settlement conference on February 19, 2013. (*Id.* at 4). Defendant then produced an additional 444 pages of documents on March 16, 2013, and finally produced approximately 4,800 pages of documents on March 28-29, 2013.

There is no undue delay in seeking leave to amend if plaintiffs acquire knowledge of the facts behind the new claim only through recent discovery and after conducting a reasonable investigation of that information. *See Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) ("The plaintiffs were entitled to a reasonable time to investigate through other sources the information they had secured from the deposition of defendant's witnesses."). Plaintiff first expressed his intention to add new defendants on May 21, 2013 in his motion to modify the scheduling order. The court then issued a paperless order on June 10, 2013, stating that it will address Plaintiff's request to amend the complaint if Plaintiff seeks belated leave. Plaintiff sought belated leave approximately one month later, on July 8, 2013. Perhaps Plaintiff could have sought leave to amend more promptly after the paperless order, but it appears that Plaintiff's belated filing is largely attributable to Defendant's delay in responding to discovery requests, rather than Plaintiff's lack of diligence. *See Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678 (D.Md. 2011) (granting leave to amend to add new counterclaim where defendant referenced a production of 902 pages of documents by plaintiff). Defendant should not be able to benefit from its own delays in producing documents, especially because Defendant first produced documents in January

of 2013, after the December deadline for joinder of parties and amendment of pleadings. Furthermore, despite Defendant's contention, Plaintiff's failure to identify specific documents which justify the late amendment is not fatal to amending the complaint to add parties and claims first adduced in discovery. *See Ground Zero Museum Workshop*, 813 F.Supp.2d at 707 ("[a]lthough Defendant does not identify specific pages within this production that support his new counterclaims, the implication is that there is a temporal connection between the two."). From the record, Plaintiff has acted with appropriate diligence in seeking to add the remaining five proposed defendants and the unjust enrichment claim against these defendants.

**B.  Rule 15(a)**

If the movant satisfies Rule 16(b)(4), he then must pass the test for amendment under Rule 15(a). *Daso v. Grafton Sch., Inc.*, 181 F.Supp.2d 485, 488 (D.Md. 2002). Rule 15 provides that courts should "freely give leave [to amend a pleading] when justice so requires." Fed.R.Civ.P. 15(a). Therefore, the court should deny leave to amend only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation and internal quotation marks omitted); *Keller v.*

19

*Prince George's Co.*, 923 F.2d 30, 33 (4th Cir. 1991) (upholding district court order denying plaintiff leave to amend his complaint to include claims that were barred by the applicable statute of limitations because such amendment would be futile). "An amendment is futile when the proposed amendment is clearly insufficient on its face, or if the amended claim would still fail to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *El-Amin v. Blom*, Civ. No. CCB-11-3424, 2012 WL 2604213, at *11 (D.Md. July 5, 2012). Under the Rule 12(b)(6) standard, the court must take all well-pled allegations as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). A complaint need not contain detailed factual allegations, but if the plaintiff fails to allege enough facts to make the claim appear "plausible on its face," then the court must dismiss the complaint. *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendant first argues futility on the ground that the court lacks personal jurisdiction over the new defendants. Although it may later be determined that this argument has merit, the court will defer ruling on the issue until the defendants over whom personal jurisdiction is asserted raise it.

Alternatively, Defendant argues that Plaintiff's proposed amendment would be futile because it would not survive a motion to dismiss.

**1.   Fraud (Count I) and Negligent Misrepresentation (Count II)**

Plaintiff asserts fraud and negligent misrepresentation claims against Lubeck, MIP, and IHRA Entertainment in the second amended complaint.  Because Plaintiff has not demonstrated good cause for adding Mr. Lubeck as a defendant and MIP is the originally named defendant, the only question remaining is whether Plaintiff has established "the essential elements of his fraud and negligent misrepresentation claims against IHRA because IHRA did not exist during the time that the alleged fraudulent and/or negligent misrepresentations occurred." (ECF No. 43, at 17).  Defendant asserts that Plaintiff's allegations relate to allegedly false representations made to Plaintiff from approximately February 2011 to July 2011, but IHRA Entertainment, LLC was not organized until December 14, 2012.  Defendant further asserts that the heightened pleading requirements of Rule 9(b) further militate against a fraud claim against "an entity that did not exist at the time the alleged fraud occurred." (*Id.* at 18).

To sustain a claim of fraud under Maryland law, the complaint must allege (1) that a false representation was made; (2) that its falsity was known to the speaker at the time it was made, or that it was made with reckless indifference to the truth; (3) that the false representation was made for the

purpose of defrauding the injured party; (4) that the injured party relied on the misrepresentation; and (5) that damages resulted. *See Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333 (1982). As Defendant observes, Plaintiff's fraud claim is subject to the heightened pleading standard of Rule 9(b).[4] Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." The word "circumstances" "is interpreted to include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (*quoting Windsor Assocs. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).

In reviewing the motion to dismiss, the court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to

---

[4] Several district courts within the Fourth Circuit, including the undersigned, have applied Rule 9(b) to negligent misrepresentation claims as well. *See Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 315 F.Supp.2d 436, 447 (M.D.N.C. 2005) (holding that even though Rule 9(b) does not expressly refer to the tort of negligent misrepresentation, the rule applies to such claims); *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 798-99 (D.Md. 2002) (evaluating whether fraud and negligent misrepresentation claims met the specificity requirements of Rule 9(b)).

the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, Defendant presents articles of organization showing that IHRA Entertainment, LLC was formed on December 14, 2012. (*See* ECF No. 43-2); *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F.Supp.2d 678, 683 (D.Md. 2001) ("When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail."). Any allegedly false statements that Plaintiff attributes to IHRA Entertainment, LLC to induce Plaintiff into entering the Settlement Agreement on March 8, 2011, predate the filing of the articles of organization in December 2012. Furthermore, Plaintiff does not explicitly address how his fraud claim satisfies Rule 9(b) as to IHRA Entertainment, LLC. Instead, Plaintiff argues that "IHRA was mentioned, referenced, represented, and contemplated within the Consulting Agreement under a pseudonym ("New Company")." (ECF No. 45, at 20). Plaintiff also contends that IHRA Entertainment, LLC can be liable even if it was formed after the Consulting Agreement terminated because "work for which ALOI was due compensation, as well as the acts by which IHRA was unjustly enriched by ALOI, all occurred before the Consulting Agreement terminated." (*Id.* at 20-21). These arguments are irrelevant for purposes of meeting the heightened pleading standard for

fraud on the basis of false representations made by IHRA Entertainment, LLC, an entity organized in December 2012. Indeed, Plaintiff's second amended complaint fails to include the "time, place and contents of the false representations" made by IHRA Entertainment, LLC. *See Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D.Md. 2000) ("A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud."); *Wiener v. Napoli*, 760 F.Supp. 278, 284 (E.D.N.Y. 1991) (holding that where "multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them."). Accordingly, naming IHRA Entertainment, LLC as a defendant in Count I of the second amended complaint would be futile.

Plaintiff's negligent misrepresentation claim as to IHRA Entertainment, LLC is similarly deficient. Under Maryland law, to assert a claim of negligent misrepresentation, a plaintiff must show:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause

> loss or injury; (4) the plaintiff,
> justifiably, takes action in reliance on the
> statement; and (5) the plaintiff suffers
> damage proximately caused by the defendant's
> negligence.

*Martens Chevrolet*, 292 Md. at 337. Plaintiff argues that "Defendant has not contested the negligent misrepresentation claim in the First Amended Complaint, and because the claim is uncontested as to MIP, the Court should find that it will survive as to LUBECK and IHRA as well." (ECF No. 45, at 22). Plaintiff cites nothing to support this argument. The fact that Defendant did not move to dismiss Plaintiff's first amended complaint does not necessarily imply that this claim is "uncontested"; further, this argument is irrelevant to whether a negligent misrepresentation claim against IHRA Entertainment, LLC would be futile. In any event, because IHRA Entertainment, LLC was not formed until December 2012, the misrepresentations Plaintiff alleges in the second amended complaint likewise cannot be attributable to this entity, especially given the heightened pleading standard also applied to this claim by courts in this district.[5]

---

[5] In opposing Plaintiff's motion, Defendant makes arguments to support dismissal of the negligent misrepresentation claim entirely for failure to state a claim. Given that the pending motion only relates to whether adding the proposed defendants and the new unjust enrichment claim would be futile, any arguments regarding the futility of the original claims against MIP will not be considered at this time.

##    2.    Breach of Contract

In the second amended complaint, Plaintiff asserts breach of contract against the following proposed defendants: MIP IV, ME, ME III, and IHRA Entertainment, LLC.  Defendant argues that MIP IV, ME, and ME III are not liable under the Consulting Agreement because they are not parties thereto.  Plaintiff takes the position that he entered the Consulting Agreement with MIP and a "new company," which is one of these four proposed defendants.  (ECF No. 41-3 ¶ 91).

To succeed on a claim for breach of contract under Maryland law, a party must prove that the other party owed a contractual obligation and that it breached that obligation.  *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001).  Here, the Consulting Agreement provides that it is between "Robert Aloi (hereinafter referred to as 'Consultant') and Moroso Investment Partners/ New Company (hereinafter referred to as 'Client')." (ECF No. 1-1, at 2).  Thus, the Consulting Agreement, which outlines the obligations of the Consultant and the Client, defines "Client" as "Moroso Investment Partners/ New Company." *See, e.g., Speechly Bircham, LLP v. Miller*, Civil Action No. 8:10-cv-03041-AW, 2012 WL 4341574, at *4 (D.Md. Sept. 20, 2012) ("the term providing that Speechly 'will represent you and ICC' amounts to mere surplusage if the Agreement created a contractual relationship between only Speechly and ICC."); *State*

*Highway Admin. v. David Bramble, Inc.*, 351 Md. 226, 237 (1998)

("this Court will ordinarily avoid interpreting contracts in a

way that renders its provisions superfluous").  The Consulting

Agreement does not define the term "new company," although

Section 3(B) states that

> [i]n the event that Client shall ultimately
> receive funding or acquire a business or
> businesses . . . Consultant shall receive as
> additional compensation at closing one and
> half percent (1.5)% of the gross purchase
> price of the business, or assets and
> goodwill of the business, purchased, joint
> ventured, expanded or acquired by *new
> company with possible name of IHRA
> Entertainment LLC*.  Consultant will also
> receive at closing a minority ownership
> percentage in new company to be determined
> once original partners are aligned.

(ECF No. 1-1, at 5) (emphasis added).

Joseph Lubeck signed the contract on behalf of Moroso

Investment Partners.  In the second amended complaint, Plaintiff

alleges that he entered the Consulting Agreement with MIP *and* a

"new company" created for the acquisition of race tracks.

Plaintiff asserts that the "'new company' referenced in the

Consulting Agreement is likely one (or more) of the following

entities: MIP IV, ME, ME III, or IHRA Entertainment."  (ECF No.

41-3 ¶ 91).  Plaintiff also alleges that "MIP, MIP II, MIP IV,

ME, ME III, and IHRA Entertainment are all managed by LUBECK,

and they are either all affiliated entities that share common

interests and assets or are all alter egos of Defendant Lubeck."
(ECF No. 41-3 ¶ 3); *DeWitt Truck Brokers, Inc. v. W. Ray
Flemming Fruit Co.*, 540 F.2d 681, 687 (4th Cir. 1976) (noting
that the determination of alter ego is a factually intensive
matter and to be made on a case-by-case basis.); *In re Am. Honda
Motor Co., Inc. Dealerships Relations Litig.*, 941 F.Supp. 528,
551 (D.Md. 1996) (evaluating alter ego liability typically
requires a fact-specific inquiry that courts delay until summary
judgment to decide).  Plaintiff asserts that as part of the
Consulting Agreement, he was to receive an equity interest in
the "new company."

Notably, in the motion to dismiss, Defendant stated that
"Aloi was engaged 'for the purposes of coordinating, reviewing
and purchasing and/or negotiating funding [of] various motor
sports and entertainment properties, companies, corporations,
limited liability entities' *for Moroso or a new company to be
created by Moroso.*"  (ECF No. 8-1, at 3) (emphasis added)
(*quoting* Consulting Agreement); *Anheuser-Busch, Inc. v. Schmoke*,
63 F.3d 1305, 1312 (4th Cir. 1995) ("[I]n deciding Rule 12(b)(6)
motions, courts may consider . . . items appearing in the record
of the case.").  Defendant further stated that "in the
Consulting Agreement, the parties contemplated that Aloi would
provide consulting services for Moroso for a limited period of
time and, thereafter, might have a continuing employment

relationship *with a new entity* to be formed (ME) if the necessary financing was secured for the contemplated acquisitions by ME." (ECF No. 8-1, at 3) (emphasis added). Plaintiff argues that the Consulting Agreement thus gave rise to certain obligation by the "new company," or alternatively, that the "new company" (which Plaintiff alleges may be one or more of the proposed defendants) is an alter-ego of Lubeck. *See, e.g., Clifton v. Tomb*, 21 F.2d 893 (4th Cir. 1927) ("[s]ince a corporation before its organization cannot have agents, and is unable to contract or be contracted with, it is not liable upon any contract which a promoter attempts to make for it, unless it becomes so by its own act after its incorporation is completed. . . . But there are cases where a corporation becomes bound for the contracts of its promoters. . . . The usual grounds that have been suggested are ratification, adoption, novation, and that the proposition made to the promoters is a continuing offer to be accepted or rejected by the corporation when it comes into being, and upon acceptance becomes an original contract on its part.").

The parties disagree as to whether "new company" agreed to be bound by the contract; the "new company" was not yet formed at the time the Consulting Agreement was executed. Judge Blake's analysis in *Alamria v. Telcor International, Inc., et al.*, 920 F.Supp. 658, 668 (D.Md. 1996), is instructive. In that

case, one of the defendants was a non-signatory to the contract and argued that it should not be required to defend the lawsuit because it lacked contractual privity with the plaintiff and was a separate and distinct entity from Telcor, another defendant. The applicable contract provision stated, in part, that "[Telcor] hereby agrees that any other business entities, affiliates, individuals, subsidiaries, or the like, of [Telcor] that exist or shall be created in the future is part of this agreement," but did not define the terms business entity, affiliate, individual, subsidiary, or "the like." *Id.* The court looked to the record to "shed some light on the relationship between the parties" and observed that "at the times relevant to this dispute, the defendant Haan was the sole owner and director of Telcor and Oncor." Similarly, Plaintiff alleges that Mr. Lubeck manages all of the proposed defendants. Furthermore, in *Alamria*, the court looked to the allegations in the complaint in the light most favorable to plaintiff and determined that it cannot be said "without doubt that plaintiff could present no set of facts entitling it to relief." *Id.* at 669.

Similarly, the facts alleged in the second amended complaint do not conclusively show that the proposed defendants did not breach the Consulting Agreement. Plaintiff alleges that he worked on the project for MIP, Mr. Lubeck, and the "new

company," but all of them did not fulfill their obligations under the contract. For instance, Plaintiff asserts that he sourced the acquisition of Memphis International Speedaway, but was not paid a commission. (ECF No. 41-3 ¶ 94). He further alleges in the second amended complaint that "LUBECK independently and/or on behalf of MIP established the new companies MIP IV, IHRA Entertainment, ME, and ME III subsequent to ALOI and LUBECK sign[ing] the Consulting Agreement, for the purposes contemplated in the Consulting Agreement. Despite the creation of these new companies, ALOI was not assigned his salaried position with benefits as required by the Consulting Agreement." (*Id.* ¶ 27).[6] Plaintiff specifies that "[i]n or around January 2013, MIP IV, a new company managed by LUBECK and created after the signing of the Consulting Agreement, LUBECK, and/or IHRA Entertainment acquired the International Hot Rod Association ('IHRA')," but Plaintiff never received his salaried position with benefits as prescribed by the Consulting Agreement. (*Id.* ¶¶ 28-30). Furthermore, he alleges that "[i]n or about December 2010, MIP II entered into an Agreement to

---

[6] The Consulting Agreement does not require that all events contemplated by the contract be complete by Section 2(A)'s express end date. Rather, it specifically provides that Defendant will be liable to Plaintiff for any work performed and compensation earned before the termination of the contract. (ECF No. 1-1, at 4).

acquire a race track . . . for Two Million Dollars," that this agreement was assigned to MIP IV, a new company also managed by Lubeck, that MIP IV then acquired the race track in approximately January of 2011 "due to ALOI's efforts and ALOI directly sourced the race track." (*Id.* ¶¶ 30-35). Plaintiff contends that despite his work, all of the proposed defendants and MIP breached the contract by failing to pay him and to assign him to the corporate position with the "new company," which he believes to be "one (or more)" of the four proposed defendants he names in this count.

At this stage, taking the plaintiff's allegations in the second amended complaint as true, and liberally construing the second amended complaint as a whole, it cannot be said with certainty that Plaintiff's breach of contract claim against the four proposed defendants is futile. Thus, this claim will proceed against the proposed defendants at this time.

### 3. Unjust enrichment

Lastly, Plaintiff seeks to add a new claim for unjust enrichment against MIP and all of the proposed defendants. Defendant argues that "[t]o the extent that Plaintiff performed services of any value for any entity (which is denied), those services could only be for [MIP]" because it was the only contracting party. (ECF No. 43, at 22). Furthermore, Defendant contends that

> [b]y failing to distinguish the entities and
> by failing to demonstrate that Plaintiff
> conferred a benefit upon each particular
> entity, Plaintiff has failed to allege
> sufficient factual support for this Court to
> find any single defendant was unjustly
> enriched by any services provided by
> Plaintiff.

(*Id.* at 23).

"Unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007) (citations omitted). A claim of unjust enrichment ordinarily cannot be brought where the subject matter of the claim is governed by an express contract between the parties. *See Janusz v. Gilliam*, 404 Md. 524, 567 (2008); *Sharma v. OneWest Bank, FSB*, Civil Action No. DKC 11-0834, 2011 WL 5167762, at *7 (D.Md. Oct. 28, 2011). Here, Plaintiff alleges in the second amended complaint that MIP IV, ME, ME III, or IHRA Entertainment, LLC may be the "new company" that also contracted with him under the Consulting Agreement. Plaintiff asserts that Aloi substantially developed the race track project and sourced "the DEFENDANTS' acquisition of race tracks, all of which have,

on information and belief, allowed DEFENDANTS to obtain significant profits and commercial benefits." (ECF No. 41-3 ¶ 98). These allegations suggest that Plaintiff's unjust enrichment claim is premised on the Consulting Agreement, which defines the parties' obligations. Thus, an unjust enrichment claim will not lie on that basis.

Plaintiff also argues, however, that "[t]he Consulting Agreement does not govern the entire subject matter of the allegations contained in the Complaint because ALOI conferred benefits to DEFENDANTS that were not party to the Consulting Agreement, and whose existence and/or activities were either not known or were hidden from ALOI." (ECF No. 41-3 ¶ 100). Plaintiff asserts that he conferred benefits *before* the Consulting Agreement. In that regard, the second amended complaint fails to state a claim per *Iqbal* and *Twombly* because Plaintiff fails to specify, beyond generalized allegations, the benefit conferred on each of the proposed defendants. "[A]llegations of 'generalized conduct' against multiple defendants are only proper if the complaint also alleges facts which evoke more than 'the mere possibility' that each individual defendant acted unlawfully." *Lawrie v. The Ginn Companies, LLC*, Civ. No. 09-446, 2010 WL 3746725, at *5 (M.D.Fla Sept. 21, 2010); *cf. SunDance Rehabilitation Corp. v. Hermitage Healthcare of Manokin Manor, LLC*, Civil Action No. WMN-12-153,

2012 WL 2190749, at *2 (D.Md. June 13, 2012) (rejecting defendant's argument calling for more specificity to support an unjust enrichment claim where "the Complaint . . . involve[d] rather straightforward claims against three entities whose connection with the subject of the complaint is clearly identified."); *Pixler v. Huff*, Civ. No. 11-207, 2011 WL 5597327, at *12-14 (W.D.Ky. Nov. 17, 2011) (specifying each defendant's involvement where the complaint named nine defendants in the context of a complex web of various business and corporate entities). Plaintiff fails to include allegations to show how Aloi could have conferred a benefit on entities that presumably did not exist before the Consulting Agreement. *See, e.g., Ramos v. Bank of America, N.A.*, Civil Action No. DKC 11-3022, 2012 WL 1999867, at *6 (D.Md. June 4, 2012) ("nowhere in the complaint are any non-conclusory facts set forth suggesting that Defendants obtained an unfair benefit"). Furthermore, although Plaintiff asserts that all of the proposed defendants are either affiliated entities that share common interests and assets or are alter egos of Lubeck, this is insufficient to infer that each proposed entity that Plaintiff seeks to hold liable for unjust enrichment knew or appreciated the benefits conferred *before* the Consulting Agreement. Accordingly, Plaintiff will

not be granted leave to add this claim to the second amended complaint.[7]

## III. Conclusion

For the foregoing reasons, Plaintiff's motion for leave to file a second amended complaint will be granted in part and denied in part.  A separate order will follow.

_____
DEBORAH K. CHASANOW
United States District Judge

---

[7] Plaintiff requests that he be granted leave to conduct limited discovery to ascertain the specific benefits conferred to each individual defendant.  Given that Plaintiff has already received over 5,000 pages of documents from Defendant and the late stage of the litigation, Plaintiff's request will be denied.